UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY MICHAEL FLINT #248501,                 Case No. 2:21-cv-00035

                Plaintiff,                 Hon.  Hala Y. Jarbou
                                         U.S. District Judge

    v.

DAWN EICHER, et al.,

                Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

### I. Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment motion and dismissal filed pursuant to Rules 56 and 12(b)(6) of the Federal Rules of Civil Procedure by Defendants Eicher, Damron, Knack, Wellman and the Michigan Department of Corrections (MDOC) (ECF No. 22); and a separate motion for summary judgment and dismissal filed by Corizon Health, Inc. (Corizon) (ECF No. 37).

State Prisoner Anthony Flint began this action by filing a verified complaint, pursuant to 42 U.S.C. § 1983, in the Michigan Court of Claims.  (ECF No. 1-1.) Defendants MDOC, Eicher, and Knack removed the complaint to this Court on February 23, 2021.  (ECF No. 1.)  On May 12, 2021, Flint filed a verified amended complaint.  (ECF No. 16.)  Flint alleges that he was denied medical care on April 15, 2019, and a special medical diet after he was diagnosed with a  GI bleed and duodenal

ulcer.   Flint asserts claims under state law for medical malpractice, negligence, and gross negligence. In addition, Flint asserts claims under federal law for cruel and unusual punishment and deliberate indifference, in violation of the Eighth Amendment, and a violation under Title II of the American with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.

Defendants Eicher and Damron concede that Flint exhausted his administrative remedies against them before he filed this lawsuit.  The record before the Court demonstrates that Flint failed to properly exhaust his claims against Defendants Knack, Wellman, and Corizon.   Thus, these three Defendants are entitled to summary judgment based on Flint's failure to exhaust his claims.  In addition, the MDOC should be dismissed from the case because it entitled to immunity under the Eleventh Amendment.  Furthermore, Flint's official capacity claims against Defendants Eicher and Damron should be dismissed because these Defendants cannot be sued in this capacity.  Finally, Flint's state law claims are based upon claims of medical malpractice and should be dismissed because Flint has failed to comply with the requirements of the medical malpractice statute.

The undersigned respectfully recommends that the Court grant both motions for summary judgment and dismissal.  If the Court adopts this recommendation, then only Flint's Eighth Amendment claims against Eicher and Damron in their individual capacities will remain.

## II. Factual Allegations

In his amended complaint, Flint says that while he was confined in the Kinross Correctional Facility (KCF) on April 15, 2019, he needed medical attention because he was experiencing shortness of breath, light headedness and black stool. (ECF No. 16, PageID.235.) Corrections Officer (CO) Fountain called the prison healthcare office and spoke with Defendant Eicher. (*Id*.) When Flint got on the phone, he told Eicher his symptoms, but Eicher stated Flint could not have shortness of breath because he was talking to her. (*Id*., PageID.235-36.) CO Fountain took the phone and spoke with Eicher, and then gave the phone back to Flint. (*Id*., PageID.236.) Eicher told Flint that he did not have a medical emergency and to fill out a kite (a written request for medical care). (*Id*.) Flint says that Eicher's response confirms Corizon's custom "that an inmate would have to be near death to receive emergency medical treatment." (*Id*.) Flint says that Eicher made no record of his phone call or request for medical care. (*Id*.)

Flint alleges that, an hour-and-a-half later, he began vomiting blood and collapsed on the floor of his unit. (*Id*.) Flint says he was taken to healthcare and treated by Defendant Damron. (*Id*.) Flint's initial blood pressure readings were 96/60 and 86/53. (*Id*.) Flint stated that he had taken 12 Tums over the past 72 hours. (*Id*.) Defendant Damron instructed Flint to fill out another medial kite but to include less detail. (*Id*., PageID.236-37.) Flint's third blood pressure reading was 104/60. (*Id*., PageID.237.) Flint believed that Defendant Damron recorded that reading. (*Id*.)

Defendant Damron allegedly diagnosed a "bug" and gave Flint more Tums and a liquid diet for two days. (*Id*.)

Later Flint vomited more blood and was taken to War Memorial Hospital where he was diagnosed with acute upper GI bleeding, a duodenal ulcer, acute anemia, H. pylori and a hiatal hernia. (*Id*.)

When he returned to the prison, Flint requested an "ulcer friendly diet" from Defendant Dieticians Wellman and Knack. (*Id*., PageID.241-42.) Dietician Wellman allegedly responded to this request by stating that "[r]eflux options are available for self selection from the statewide standard menu, no diet order is needed for this." (*Id*., PageID.242.) In addition, Flint says that Wellman instructed him to avoid adding spices, pepper, or hot sauce and to avoid tomatoes. (*Id*.) Flint claims that most of the meals contain pepper, other spices, or barbecue sauce, and that there is ketchup in the beans. (*Id*.) Flint alleges that maintaining a proper ulcer-friendly diet cost him over $3,000.00 for extra food from the prison store and caused him to refrain from eating meals served from the regular prison menu. (*Id*., PageID.243.)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## V.  Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|--------|-------|-----------|------------------------------------|
| 1 | Failed to provide urgent medical care | Eicher | April 15, 2019 |
| 2 | Failed to provide proper medical care and falsified medical records | Damron | April 15, 2019 |
| 3 | Custom requiring inmates to be near death before allowing treatment | Corizon | April 15, 2019 |
| 4 | Failed to provide special ulcer friendly diet | Wellman and Knack | Undated in complaint |
| 5 | Allowed Eicher and Damron's negligence, cruel and unusual punishment, | MDOC, Corizon, Eicher, and Damron | Undated in complaint |

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

| | deliberate indifference, and medical malpractice by denying grievances and failure to train | | |
|---|---|---|---|

## VI.  Grievances Identified by Defendants

In their motion, the MDOC Defendants identified four relevant grievances that Flint filed.  They claim that a review of these grievances will demonstrate that Flint has failed to exhaust his administrative remedies.  These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| KCF-19-04-0292-28J (ECF No. 23-3, PageID.362- | Ball | Failed to review health care kite, and investigate grievance | April 23, 2019 | Rejected as duplicative of KCF-19-04-264-12E and KCF-19-04-265-12E.) | Rejection upheld | Rejection upheld |
| KCF-19-04-0265-12E (ECF No. 23-3, PageID.356-361.) | Damron | Denied urgent medical treatment | April 15, 2019 | Denied | Denied | Denied |
| KCF-19-04-0264-12E  (ECF No. 23-3, PageID.350-355.) | Eicher | Denied urgent medical treatment by telling him to submit a medical kite | April 15, 2019 | Denied | Denied | Rejected as duplicative to KCF 19-04-265 |
| KCF-19-05-0372-28E  (ECF No. 23-3, PageID.345-349.) | Knack | Failure to provide special medical diet | April 22 – May 16, 2019 | Rejected as untimely | Rejection upheld | Rejection upheld |

## VII.  Analysis of Exhaustion Arguments

Defendants  Eicher  and  Damron  concede  that  Flint  exhausted  the  claims asserted against them (Claims 1 and 2 in the table in Section V).

Defendants Wellman, Knack, and Corizon argue that Flint failed to properly exhaust his administrative remedies against them.

## A. Exhaustion of Flint's Claims Against Knack

In grievance **KCF-19-05-0372-28E**, Flint named Defendant Knack, and alleged that Knack failed to provide him a special diet between April 22 and May 16, 2019.   This grievance was rejected for being untimely.

In his Step I grievance, Flint asserted:



(ECF No. 23-3, PageID.348.)

The Step I rejection states:

**SUBJECT**:    Receipt/Rejection for Step I grievance.

You have two business days after becoming aware of a grievable issue to attempt to resolve the issue.  Grievants initial attempt to resolve issue is a date of 4/22/19.  Grievant must file within 5 business days after the date of attempting to resolve the issue.   Any future reference to this grievance should reflect:

Grievance Identifier:  KCF1905 372 28E

(ECF No. 23-3, PageID.349.)  The rejection was upheld at Step II and Step III of the grievance process.  (*Id.*, PageID.345-347.)

Flint argues that he was thwarted from exhausting this grievance due to the rejection for timeliness because the MDOC failed to consider the date range of the incident.  (ECF No. 25, PageID.374.)  This argument misconstrues the reason for the rejection of this grievance, which was not based on the date range of the incident, but rather on the date Flint first attempted to resolve the matter.  Flint's Step I grievance states he attempted resolution on 4/22/19; thus, the deadline for his Step I grievance was 4/27/19.  MDOC PD 03.02.130, ¶ Q.  (ECF No. 23-3, PageID.348.)   Flint missed this deadline.  The record before the Court indicates that he waited and filed his Step I grievance late on 5/16/19.  This grievance was not properly filed against Defendant Knack because it was untimely.  This seems like a technicality.  But, if the situation were otherwise, a prisoner could revive a grievance that was filed well after the initial 5-day limit set forth in MDOC PD 03.02.130, ¶ Q by alleging a date range.  This interpretation would circumvent the time limits in MDOC PD 03.02.130.

### B. Exhaustion of Flint's Claims Against Wellman

Flint did not file a grievance naming Defendant Wellman.  The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance.  *Mattox*, 851 F.3d at 596.  An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint.  *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee").

Where a prisoner fails to name a Defendant in his Step I grievance, or mentions an individual is involved for the first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Id*. at *6.

Flint claims that he did not learn of Defendant Wellman's name until after he had filed his untimely grievance **KCF-19-05-0372-28E**. (ECF No. 25, PageID.375.) Flint asserts that if he had filed a grievance against Defendant Wellman, it would have been dismissed as duplicative of grievance **KCF-19-05-0372-28E**. Flint's assertion that a subsequent grievance against Defendant Wellman would have been rejected as duplicative is simply speculation. The Court does not know if the grievance would have been rejected. Moreover, simply because a grievance is rejected as duplicative does not necessarily mean that it is unexhausted under the grievance procedures.[3] As noted above, grievance **KCF-19-05-0372-**28E was properly rejected as being untimely. Thus, any subsequent grievance that was duplicative of grievance

---

[3]     Ordinarily, when a grievance is rejected for a failure to satisfy policy, the grievance fails to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). A common exception to the rejection rule occurs when the rejected grievance is duplicative of an earlier grievance. If a grievance is rejected for being duplicative of an earlier grievance, then the duplicate grievance contains an issue or issues that MDOC has already had an opportunity to address, and the duplicative grievance will be construed as having the same disposition as the original grievance. When a grievance is rejected as duplicative, the court must look through that grievance to the prior grievance or grievances filed by the prisoner. *Hardy v. Agee*, No. 16-2005, 3-4 (6th Cir., Mar. 5, 2018) (W.D. Mich. Case No. 2:13-cv-230). To determine whether a duplicative grievance is unexhausted, the Court must compare the later grievance to the earlier grievance. *Reedy v. West*, 2017 WL 2888575 (E.D. Mich. May 5, 2017). If the first grievance or grievances were properly exhausted through each step of the process, the duplicative grievance is also considered exhausted. *Id*. If the first grievance or grievances were not properly exhausted, then the duplicative grievance is also unexhausted. *Id*.

14

**KCF-19-05-0372-28E** would also be rejected and the claims stated in that grievance would not be exhausted.

In the opinion of the undersigned, the claims asserted against Defendant Knack and Wellman should be dismissed because grievance **KCF-19-05-0372-28E** failed to properly exhaust the claim asserted against Defendant Knack, and Defendant Wellman was never named in a grievance.

## C. Exhaustion of Flint's Claims Against Corizon

Corizon asserts that Flint did not exhaust his administrative remedies with respect to his claim against it. The records before the Court show that Flint did not name Corizon in a properly exhausted grievance. Flint argues that he could not file a grievance under prison policy against a vendor such as Corizon. Policy Directive 03.02.130 ¶ J(12) (ECF No. 41, PageID.553-554) provides that a grievance against "an MDOC vendor or an outside agency" shall be rejected. Corizon argues that it is not a vendor but an independent contractor who is contractually obligated to provide services to the State of Michigan. The contract between Corizon and the State of Michigan indicates that Corizon is an independent contractor:

> **2.027    Relationship of the Parties**
> The relationship between the State and Contractor is that of client and independent contractor. No agent, employee, or servant of Contractor or any of its Subcontractors must be or be deemed to be an employee, agent or servant of the State for any reason. Contractor will be solely and entirely responsible for its acts and the acts of its agents, employees, servants and Subcontractors during the performance of the Contract.

https://www.michigan.gov/documents/buymichiganfirst/9200147_266870_7.pdf. The MDOC allows prisoners to file grievances against Corizon, and courts have dismissed Corizon from lawsuits where administrative grievances were unexhausted and allowed claims to proceed where administrative grievances were exhausted. *Taylor*

*v. Corizon*, 2018 WL 4292398 (E.D. Mich., Sept. 10, 2018) (dismissing Corizon due to the failure to exhaust administrative remedies); *Maldondodeher v. Corizon*, 2016 WL 61611558 (W.D. Mich., Oct. 24, 2016) (same); *Ragland v. Corizon*, 2020 WL 5200884 (W.D. Mich., Sept. 1, 2020) (administrative remedies were exhausted by naming Corizon in a grievance).

In the opinion of the undersigned, Flint failed to exhaust his administrative remedies by naming Defendant Corizon in a properly exhausted grievance.

## VIII.  Flint's ADA Claim

The MDOC and Defendants Eicher, Damron, Knack, and Wellman argue that they are entitled to summary judgment on Flint's ADA claim, but actually argue that Flint failed to state an ADA claim in his complaint.  (ECF No. 23, PageID.326-327.) Thus, Defendants are actually arguing that they are entitled to dismissal under Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court must construe the complaint in the light most favorable to plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A judge may not dismiss the

complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to establish a claim under Title II of the ADA, Flint must show:

(1) that he is a qualified individual with a disability;

(2) that defendants are subject to the ADA; and

(3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against

17

by defendants, by reason of plaintiff's disability.  *Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

The MDOC and Defendants Eicher, Damron, Knack, and Wellman argue that Flint is not a qualified individual with a disability under the ADA, because he has failed to show that his gastric issues were more than a temporary, non-chronic condition.  In the ADA, the term "disability" is defined as follows: "[A] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [B] a record of such an impairment; or [C] being regarded as having such an impairment."  42 U.S.C. § 12102(1).

The ADA provides that an individual meets the requirements of having such an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  Impairments that are expected to last 6 months or less are considered transitory and minor, and do not qualify as disabilities under the ADA.  42 U.S.C. § 12102(3)(B).  Flint argues that his gastric issues are continuing in nature and ongoing and have lasted for two years.  (ECF  No. 25, PageID.377.)

Flint's allegations fail to implicate ADA concerns.  Flint asserts that he was denied a proper dietary meal by Defendants Knack and Wellman, and was denied emergent medical care by Defendants Eicher and Damron.  Flint's allegations for a special diet and emergent medical care involve medical treatment.  "The ADA does

18

not provide relief for alleged incompetent treatment", including the denial of a request for a "dietary accommodation." *Kensu v. Rapelje*, 2015 WL 5302816 (E.D. Mich., Sept. 10, 2015). Flint's claims fail to implicate the ADA because he alleges that Defendants Eicher and Damron failed to provide emergent medical care on April 15, 2019. Similarly, Flint's unexhausted claims against Defendants Knack and Wellman for failing to provide him with a special diet involve medical care, and, accordingly, fail to implicate the ADA.

### IX. Eleventh Amendment Immunity and Official Capacity Claim

To the extent that Flint is suing the MDOC and Defendants Eicher, Damron, Knack, and Wellman in their official capacities, his claim is barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their

capacity as state officials.  *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).  To the extent that Flint  seeks money damages, costs, and fees from Defendants Eicher, Damron, Knack, and Wellman in their official capacities, that part of his lawsuit is barred by sovereign immunity.[4]

Similarly, Flint may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).  In addition, the State

---

[4]      "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).  Only the second exception is potentially at issue here.  "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."  *Id.*

of Michigan (acting through the MDOC) is not a "person" who may be sued under §
1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002)
(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d
at 771.   In the opinion of the undersigned the MDOC is entitled to Eleventh
Amendment immunity.

## X. Corizon

Defendant Corizon argues that Flint failed to state a claim upon which relief
can be granted.  Fed. R. Civ. P. 12(b)(6).  Even if Flint exhausted his claims against
Defendant Corizon, he fails to establish a basis for Corizon's liability.  In the opinion
of the undersigned, Flint's claim against Corizon fails because the corporation cannot
be liable for an individual Defendant's actions based upon a theory of respondeat
superior or vicarious liability.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United
States Supreme Court held that municipalities could be subject to Section 1983
actions for alleged constitutional violations, albeit in a narrow set of circumstances.
"A municipality may not be held liable under § 1983 on a *respondeat superior* theory
– in other words, '*solely* because it employs a tortfeasor.'"  *D'Ambrosio v. Marino*, 747
F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in
original)).  Instead, a municipality may only be liable under § 1983 when its policy or
custom causes the injury, regardless of the form of relief sought by the plaintiff.  *Los
Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694
(1974)).

In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

"The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citing *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)). Similarly, the delivery of health care by a private provider to state prisoners pursuant to a contract with the state constitutes actions under color of state law for purposes of Section 1983. *West v. Atkins*, 487 U.S. 42, 57 (1988). As a result, a *Monell* claim would be equally applicable against Corizon. And this Court has applied *Monell* liability to contract health care providers like Corizon. *See*, *e.g.*, *Nobles v. Quality Correctional Care of Michigan, et al.*, No. 1:21-CV-199, 2021 WL 1827077, at *5 (W.D. Mich. May 7, 2021) (stating that "Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation").

To prove a deliberate indifference claim against Corizon, Flint must show that "through its deliberate conduct, [Corizon] was the 'moving force' behind the injury alleged." *Allman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cnty.*

*Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). He must prove that Corizon had a "policy or custom" that caused a violation of her rights.  *Monell*, 436 U.S. at 694.

A successful *Monell* claim can rest on one of four different theories of liability: (1) a clear and persistent pattern of unconstitutional conduct by contractor's employees, (2) the municipality's notice or constructive notice of the unconstitutional conduct, (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction, and (4) that the policy of inaction was the moving force of the constitutional deprivation.  *Winkler*, 893 F.3d at 902.  Regardless of which theory of liability Flint's claim best fits, he has failed to present evidence establishing a genuine issue of fact as to whether an unwritten policy affected him on other occasions or other prisoners.

Flint simply alleges that he was denied treatment because Corizon has a policy to deny prisoners treatment to save money.  Flint's amended complaint states that "RN Eicher's response is indicative of Corizon's custom that an inmate would have to be near death to receive emergency medical treatment because of their financial interests." (ECF No.16, PageID.236.)  Flint says that Corizon was contractually required to choose a less effective method of treatment and to avoid off-site treatment based upon financial interests.  (*Id*., PageID.239.)  Flint points to the contract between the State of Michigan and Corizon, focusing on the statement "that the Contractor has the incentive to manage inmate healthcare on-site where appropriate and minimize the use of off-site services except where medically necessary."  (ECF

23

No. 16-3, PageID.251.) Flint has not explained how this created an unconstitutional policy or procedure. In the opinion of the undersigned, Flint failed to identify an allegedly unconstitutional policy and failed to demonstrate a pattern of conduct by Corizon to deny prisoners medical care and treatment to save costs. In other words, Flint's allegations fail to state a claim upon which relief may be granted.

## XI. State Law Negligence, Gross Negligence, and Medical Malpractice

Flint asserts that Defendants were negligent, gross negligent, and committed medical malpractice. Flint's negligence and gross negligence claims are based upon medical malpractice. Under Michigan law, negligence claims that involve allegations of medical judgment are properly brought as medical malpractice claims. *Bryan v. Oakpointe Villa Nursing Centre*, 471 Mich. 411, 420 (2004); *Jones v. Correctional Medical Services, Inc.*, 845 F. Supp. 2d 824, 845-848 (W.D. Mich. 2012) (gross negligence and negligence claims couched in terms of medical malpractice fail to avoid the application of the requirements necessary to bring a medical malpractice action under Michigan law). A plaintiff asserting a medical malpractice claim arising under Michigan law must comply with the requirements of the state medical malpractice statute Mich. Comp. Laws § 600.2912d(1), which requires an affidavit of merit. *Jones*, 845 F. Supp. 2d 857-858.

In the opinion of the undersigned, Flint's state law claims should be dismissed due to his failure to comply with requirements of Michigan's medical malpractice statute.

## XII. Recommendation

24

The undersigned respectfully recommends that the Court grant both motions for summary judgment and dismissal. (ECF Nos. 22 and 37.)   As a result, the undersigned recommends dismissal of the following:

1.  Flint's claims against Knack, Wellman without prejudice,

2.  Flint's claims against the MDOC and Corizon with prejudice, and

3.  Flint's official capacity claims against Defendants Eicher and Damron.

If the Court adopts this recommendation, Flint's Eighth Amendment claims against Defendants Eicher and Damron in their individual capacities will remain in the case.


Dated:   November 22, 2021                         /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).