UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY MICHAEL FLINT,

    Plaintiff,

v.

DAWN EICHER, et al.,

    Defendants.
_____/

Case No. 2:21-cv-35

Hon. Hala Y. Jarbou

## **OPINION**

On November 22, 2021, the magistrate judge issued a Report and Recommendation (R&R) recommending that the Court grant Defendants Eicher, Damron, Knack, Wellman and the Michigan Department of Corrections' (MDOC) motion for partial summary judgment (ECF No. 22) and Defendant Corizon Health, Inc.'s (Corizon) separate motion for summary judgment and dismissal (ECF No. 37). (ECF No. 59.) Before the Court is Plaintiff's objection to the R&R (ECF No. 60).

> The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Plaintiff is a state prisoner incarcerated at Kinross Correctional Facility (KCF). Plaintiff asserts claims under federal law for denial of medical care and denial of a special medical diet after he was diagnosed with a GI bleed and duodenal ulcer in violation of Title II of the American with Disabilities Act (ADA), 42 U.S.C. § 1983, and the Eighth Amendment for cruel and unusual punishment and deliberate indifference; and under state law for medical malpractice, negligence,

and gross negligence. The magistrate judge's recommendation was based on findings that, with regard to several Defendants, Plaintiff failed to exhaust his administrative remedies in compliance with MDOC procedures as required by the Prisoner Litigation Reform Act (PLRA); failed to state a claim under the ADA, 42 U.S.C. § 12131 et seq; failed to comply with certain requirements for his state law claims; and that Defendant MDOC was entitled to Eleventh Amendment immunity. Plaintiff objects to almost every finding in the R&R. The Court will address each in turn.

I. **EXHAUSTION OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS KNACK AND WELLMAN**

The R&R found that Plaintiff's claims against Knack and Wellman should be dismissed for failure to exhaust his administrative remedies. The grievance that Plaintiff filed against Knack was rejected as untimely and Plaintiff had never filed a grievance naming Wellman. Among other objections, Plaintiff faults the R&R for failing to address the argument in his surreply, where he argued that neither Knack nor Wellman are entitled to dismissal because there were no administrative remedies available for him to exhaust. *See Ross v. Blake*, 578 U.S. 632, 648 (2016) (holding that the PLRA's exception to mandatory exhaustion states that an inmate need only exhaust such administrative remedies that are available).

"'The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 223-24 (6th Cir. 2011) (quoting *Braswell v. Corrs. Corp. of Am.*, No. 08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009)). "In cases where the Sixth Circuit has analyzed whether a prisoner's exhaustion efforts, though not complete, were sufficient, the prisoner has at least tried to file a grievance." *Doe v. Mich. Dep't of Corr.*, No. 13-14356, 2016 WL 465496, at *10 (E.D. Mich. Feb. 8, 2016) (citing cases). For example, in *Rancher v. Franklin County.*, 122 F. App'x 240, 242 (6th Cir. 2005), the court reversed a dismissal for failure

2

to exhaust where the plaintiff had filed a grievance with the jail and submitted documents from other prisoners where they had submitted grievances for medical treatment that were rejected as non-grievable. *Id.* "The court held that lack of availability of a formal grievance procedure to the plaintiff waived the exhaustion requirements of the PLRA." *Manley v. Rose*, No. 1:11-cv-150, 2012 WL 425784, at *1 (W.D. Mich. Feb. 9, 2012) (citing *Rancher*, 122 F. App'x at 242).

First, Plaintiff has filed a grievance KCF-19-05-0372-28E for his dietary concerns. Further, as in *Rancher*, Plaintiff presented an affidavit from fellow prisoner Gary Hollins and Hollins's grievance which complained about the lack of a low reflux diet but was denied by the MDOC as non-grievable, on the grounds that "[a] grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant." (Hollins Grievance Rejection Letter, ECF No. 47-1, PageID.679.) This lack of a formal grievance procedure for Plaintiff waives the exhaustion requirement. *See Rancher*, 122 F. App'x at 242 ("This evidence demonstrates the existence of a 'flat rule' against medical grievances and justifies excusing the exhaustion requirement"). Because there were no available remedies that would allow Plaintiff to exhaust his claim against Knack and Wellman, Plaintiff's claims against them may proceed.

**II.    EXHAUSTION OF PLAINTIFF'S CLAIMS AGAINST DEFENDANT CORIZON**

Plaintiff objects to the magistrate's finding that he failed to exhaust his remedies against Corizon by not naming Corizon in any grievances. Plaintiff argues that he could not file a grievance against Corizon under prison policy because the MDOC considers Corizon to be a vendor rather than an independent contractor. Policy Directive 03.02.130 ¶ J(12) (ECF No. 41, PageID.553-554) provides that a grievance against "an MDOC vendor or an outside agency" shall be rejected. Plaintiff points to a letter from the MDOC to Corizon requesting that Corizon cure specific breaches and deficiencies, listed in a table titled "Current Vendor Deficiencies." (ECF No. 45-1, PageID.603.) However, as the R&R recognizes, the contract between Corizon and the

State of Michigan indicates that Corizon is an independent contractor. https://www.michigan.gov/documents/buymichiganfirst/9200147_266870_7.pdf. The MDOC allows grievances against Corizon, which Plaintiff acknowledges. (Pl.'s Obj. to R&R, ECF No. 60, PageID.762.) Plaintiff further argues that the MDOC only allows grievances against Corizon where a Corizon employee is working at the prison. Plaintiff does not provide any support for this submission. Therefore, Plaintiff's objection is overruled, and Plaintiff has failed to exhaust his administrative remedies against Corizon.

### III. PLAINTIFF'S ADA CLAIM & ELEVENTH AMENDMENT IMMUNITY

Plaintiff makes two objections regarding his ADA claim against the MDOC: (1) the magistrate erred in concluding that he failed to state an ADA claim based on Defendants Knack and Wellman's denial of a proper diet and (2) Eleventh Amendment immunity does not apply to the ADA claim. The magistrate concluded that Plaintiff's allegations failed to implicate the ADA because "[t]he ADA does not provide relief for alleged incompetent [medical] treatment[,]" including the denial of a request for "dietary accommodation." *Kensu v. Rapelje*, No. 12-11877, 2015 WL 5302816, at *4 (E.D. Mich. Sept. 10, 2015) (citing *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004)). Plaintiff objects that this is not just a case where he is complaining of "being denied adequate medical care, but rather, he is being denied a medically required diet because of his disability[.]" (Pl.'s Obj. to R&R, PageID.764.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to establish a claim under Title II of the ADA, Plaintiff must show that

> (1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of [his] disability.

4

*Tucker v. Tennesee*, 539 F.3d 526, 532 (6th Cir. 2008). A person is disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [has] a record of such an impairment; or [is] regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). The definition of disability is intended to be "construed in favor of broad coverage . . . to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4)(A). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). The ADA does not apply to impairments that are transitory and minor, and those are generally impairments "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). The ADA regulations require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless the modifications "would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7); *see also Madej v. Maiden*, 951 F.3d 364, 372 (6th Cir. 2020). Courts have held that the ADA "afford[s] disabled persons legal rights regarding access to programs and activities enjoyed by all, but [this statute does] not provide a general federal cause of action to challenge the sufficiency of the medical treatment of their underlying disabilities." *Bonds v. S. Health Partners Inc.*, No. 2:15-CV-209-WOB, 2016 WL 1394528, at *6 (E.D. Ky. Apr. 6, 2016) (collecting cases).

On *de novo* review, the Court is not persuaded that the denial of Plaintiff's request for a special diet for his condition is not a viable ADA claim. The district court in *Kensu* relied on the opinion in *Carrion* to hold that Kensu's request for dietary accommodation was medical treatment. *Kensu*, 2015 WL 5302816, at *4. In *Carrion*, the district court found that Carrion alleged only that he was denied medical treatment in the form of a proper diet, and "failed to allege that the defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that they subjected him to discrimination because of his diabetes." *Carrion*, 309 F. Supp. 2d at 1016. Here, Plaintiff argues that he "was denied the opportunity to participate in the activity of MDOC's meal program because of his disability." (Pl.'s Obj. to R&R, PageID.764.) The Court is not persuaded that Plaintiff's request for a special diet is a request for medical treatment; rather, Plaintiff's request for a diet appropriate for his condition was a request for a reasonable accommodation to allow him to participate in the MDOC's meal service. *See, e.g., Brooks v. Colo. Dep't of Corrs.*, 715 F. App'x 814, 819 (10th Cir. 2017) (concluding that Brook's request for a special meal pass because of his ulcerative colitis was not "invoking the [ADA] to complain about his medical care"; he was "claiming a failure to provide adequate accommodations to allow the same access to services, programs, and activities that are available to prisoners without disabilities").

The Court agrees with the R&R that Plaintiff cannot state an ADA claim based on the denial of medical treatment from Defendants Eicher and Damron.

Defendants have also argued that Plaintiff failed to state a claim under the ADA because he has not shown how he is a qualified individual with a disability as defined by the ADA. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)

6

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).  The court must construe the complaint in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Plaintiff has alleged that he requested an ulcer friendly diet after he was diagnosed with "acute upper GI bleeding, a duodenal ulcer, acute anemia and H-pylori," "and a hiatal hernia" in April of 2019.  (Am. Compl., ECF No. 16, PageID.237.)  While there is no suggestion that this diagnosis contains a per se disability, Plaintiff has also alleged that his condition was continuing into March of 2021, almost two years later.  (*Id.*, PageID.242.)  This is sufficient to show that his physical impairment was not transitory.  Further, he has alleged that Defendant Wellman told him to avoid certain foods, but would not put in a diet order for him.  Plaintiff alleged that the state-wide menus for the MDOC contains many of the foods and spices he was told to avoid, so he was unable to obtain the 2,600 calories per day that he was entitled to.  Because eating is a major life activity, Plaintiff has alleged sufficient facts in his complaint to state an ADA claim.  Plaintiff's objection is sustained.

Defendant Corizon argued in its motion that Plaintiff cannot bring an ADA claim against it because it is not a "public entity." *See Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (citing *Green v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006)) ("A private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services.") Plaintiff has not responded to this argument.  The Court concludes that Corizon is entitled to summary judgment with respect to Plaintiff's ADA claim against Corizon.

Plaintiff also objects that Eleventh Amendment immunity does not apply to his ADA claim.  However, neither the Defendants nor the R&R raised an Eleventh Amendment issue as to the ADA claim.  Therefore, there is no need to address this objection.

## IV. PLAINTIFF'S CONSPIRACY CLAIMS

Plaintiff objects to the R&R's failure to consider Plaintiff's conspiracy claims discussed in his Response to Defendant's Motion for Summary Judgment. "'It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Spadafore v. Garner*, 330 F.2d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Plaintiff's only allegation in his Amended Complaint regarding conspiracy was that "RN Damron, RN Eicher, the MDOC and Corizon had conspired to carry out a custom of delaying or denying access to adequate care, placing profits over Plaintiff's well being." (Am. Compl., PageID.239.) This is not sufficient to plead a proper conspiracy claim. Therefore, Plaintiff's conspiracy claims are dismissed for failure to state a claim.

## V. PLAINTIFF'S STATE LAW CLAIMS

Plaintiff objects to the recommendation that his state law claims be dismissed on the grounds that he has not complied with the state law requirement of an affidavit of merit. Plaintiff's state law claims of negligence, gross negligence, and medical malpractice are all categorized as medical malpractice claims under Michigan law. *Bryan v. Oakpointe Villa Nursing Centre*, 471 Mich. 411, 420 (Mich. 2004). A plaintiff asserting a medical malpractice claim arising under Michigan law must comply with the requirements of the state medical malpractice statute, Mich. Comp. Laws § 600.2912d(1), which requires an affidavit of merit. While courts in this district and those in the Eastern District have split on whether federal courts should require an affidavit of merit, this Court agrees with the reasoning in *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824 (W.D. Mich. 2012), that the Court apply this requirement in order to prevent forum shopping. *Id.* at 853-58. Therefore, Plaintiff's objection is overruled, and his state law claims are dismissed for failure to comply with Michigan's medical malpractice statute.

## VI. CONCLUSION

For the reasons stated, the Court will sustain Plaintiff's objections to the R&R in part and overrule his objections in part. An order will enter consistent with this Opinion.

Date:  January 24, 2022             /s/ Hala Y. Jarbou
                                    HALA Y. JARBOU
                                    UNITED STATES DISTRICT JUDGE